UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED,<br><br>Plaintiff (s),<br>v.<br><br>KAMAL SALIBI, ET AL.,<br>Defendant(s). | No. C 08-01538 PJH<br><br>ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND ADR DEADLINES |

IT IS HEREBY ORDERED that this action is assigned to the Honorable Phyllis J. Hamilton. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order and all other documents specified in Civil Local Rule 4-2. Counsel must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov. A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

### CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|---|---|---|
| 3/20/2008 | Complaint filed | |
| 6/5/2008 | *Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file Joint ADR Certification with Stipulation to ADR Process or Notice of Need for ADR Phone Conference | Civil L.R. 16-8 |
| 6/19/2008 | *Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at http://www.cand.uscourts.gov) | FRCivP 26(a) (1)<br>Civil L.R . 16-9 |
| 6/26/2008 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) in Courtroom 3 17th Flr at 2:30 PM | Civil L.R. 16-10 |

* If the Initial Case Management Conference is continued, the other deadlines are continued accordingly.

**Judge Phyllis J. Hamilton**
Courtroom 3, 17th Floor

Nichole Heuerman, Courtroom Deputy
(415) 522-2023

## STANDING ORDER FOR PATENT CASES

The following instructions shall apply to all patent cases assigned to Judge Phyllis Hamilton.

### Joint Claim Construction Statement

1.  The joint claim construction statement required by Pat. L. R. 4-3 must be truly joint. Disputed terms, phrases, and clauses must be clearly designated as disputed. All other terms will be presumed undisputed. For any term in dispute, the parties must agree on what the term actually is. With regard to disputed terms, phrases, or clauses, the joint statement must list each disputed term, phrase, or clause (listed by claim); each party's proposed construction; and support for each party's proposed construction side by side. A model joint claim construction statement is attached to this order.

2.  Parties must attach to the joint claim construction statement copies of all patents in dispute. Parties must also make a complete prosecution history for each patent available to the court upon request.

### Claim Construction

3.  As an initial matter, the court will construe no more than ten terms. If more than ten terms are in dispute, the parties must meet and confer before the preparation of the joint claim construction statement on narrowing the selection of terms to be construed by the court and must jointly propose the ten terms requiring construction.

4.  If a party genuinely believes that it will require that more than approximately ten terms be construed, that party may move pursuant to Civ. L. R. 7-11 for leave to designate additional terms for construction. The requesting party must demonstrate good cause and explain why other methods of limiting the claims at issue (such as selecting representative claims or grouping claims by issues presented) would be ineffective. The request must be filed no later than two weeks before the deadline for filing the joint claim construction statement. If good cause is shown, the court will either agree to construe all terms or, if necessary, schedule a second claim construction proceeding on the terms that exceed ten. If more than approximately ten terms are submitted for construction without leave of court, the court will construe the first ten terms listed in the joint claim construction statement and sanctions may be imposed.

5.     Claim construction briefs must address each disputed term, but only those that are truly disputed, following the order of the joint statement. The court anticipates that a meaningful meet and confer preceding the preparation of the joint claim construction statement will obviate the need for a party to propose in its briefs a claim construction that differs from that proposed in the statement. While the court encourages the parties to negotiate mutually agreeable constructions, the court discourages the parties from proposing new constructions for the first time in reply briefs or other filings which do not afford the opposing party an opportunity to respond. However, if it becomes necessary for a party to propose a different construction in its brief than that found in the joint claim construction statement, that party must clearly set forth the new construction and explain the basis for the change. Additionally, that party shall revise the joint claim construction statement, so that the court will have one document reflecting all current proposed constructions.

## Tutorial and Claim Construction Hearing

6.     The court will schedule a tutorial to occur two to four weeks prior to the claim construction hearing. Each side will be permitted 30-45 minutes to present a summary of the background of the technology involved, an explanation of the nature of the problem the inventor sought to solve, and reference to the prior art in existence at the time of conception. The patent holder will make the first presentation. Visual aids are encouraged. The court prefers that someone other than counsel make the presentation. No argument or examination will be permitted. The proceeding is not recorded and statements made during the tutorial may not be cited as judicial admissions against a party.

7.     Prehearing conferences are not generally held. However, either party may request a telephone conference within two weeks prior to the hearing, or the parties may address any prehearing issues at the tutorial.

8.     The patent holder will act as the moving party for the purposes of claim construction. Opening briefs in support of claim construction must be filed at least six weeks before the date of the claim construction hearing, and the briefing schedule set forth at Patent L. R. 4-5 will apply.

9.     The court will not ordinarily hear extrinsic evidence at the claim construction hearing. Should it become apparent that testimony will be necessary, counsel may request a telephone conference with the court within two weeks of the hearing to seek the court's approval.

10.    Demonstrative exhibits and visual aids are permissible at the hearing as long as they are based on information contained in the papers already filed. Counsel shall exchange copies of exhibits no later than forty eight hours prior to the hearing.

11.    The claim construction hearing will generally be scheduled for no longer than 3 hours on Wednesday's law and motion calendar. However, the court will specially set the hearing on a different day and for a longer period of time if warranted. Counsel should request a telephone conference with the court as soon as it is apparent that a special setting is necessary.

## Subsequent Case Management Conference

12.     Upon issuance of the claim construction ruling, the court will also set a date for a further case management conference. In the case management statement to be filed 7 calendar days prior to the conference, the parties must address the following topics:

      a)     anticipated post-claim construction discovery;
      b)     the filing of dispositive motions
      c)     if willful infringement has been asserted, whether the allegedly-infringing party wishes to rely on the advice of counsel defense. If so, the parties should be prepared to address proposals for resolving any attorney-client privilege issues that arise, and whether the parties believe bifurcation of the trial into liability and damages phases would be appropriate;
      d)     the progress of settlement discussions, if any;
      e)     any other pretrial matters;

## Sample Claim Construction Statement

| Claim Language (Disputed Terms in **Bold**)<br><br>'xxx Patent | Plaintiff's Proposed Construction and Evidence in Support | Defendant's Proposed Construction and Evidence in Support |
|---|---|---|
| 1. A method for counting **ducks,** comprising the steps of:<br><br>[or]<br><br>**ducks**<br><br>Found in claim numbers:<br><br>'xxx Patent: y, z<br>'yyy Patent: a, b | **duck**<br><br>PROPOSED CONSTRUCTION: a bird that quacks.<br><br>DICTIONARY/TREATISE DEFINITIONS: Webster's Dictionary ("duck: bird that quacks"); Field Guide ("bird call: quack");<br><br>INTRINSIC EVIDENCE: 'xxx Patent col. _:_ ("distinctive honking"); Prosecution History at __ ("This patent is distinguished from the prior art in that the quacking of the bird is featured").<br><br>EXTRINSIC EVIDENCE: McDonald Depo. at xx:xx ("I'd say the quacking makes it a duck"); '123 Patent at col _:_; Donald Decl. at ¶ __ . | **duck**<br><br>PROPOSED CONSTRUCTION: a bird that swims<br><br>DICTIONARY/TREATISE DEFINITIONS: Random House Dictionary ("an aquatic bird"); Field Guide (same)<br><br>INTRINSIC EVIDENCE: 'xxx Patent col _:_ ("ducks may be found on or near bodies of water"); Prosecution History at __ ("water fowl are particularly amenable to being counted by this method").<br><br>EXTRINSIC EVIDENCE: G. Marx Depo at xx:xx ("like a duck to water"); '456 Patent at col _:_; Daffy Decl. at ¶ __ . |

(Or any other substantively similar format that permits the court to compare terms side by side)

**NOT:**

| Claim Language (Disputed Terms in **Bold**)<br><br>'xxx Patent | Plaintiff's Proposed Construction and Evidence in Support | Defendant's Proposed Construction and Evidence in Support |
|---|---|---|
| 1. A method for counting **ducks** . . . | **duck** | **counting ducks** |

4

**JUDGE PHYLLIS J. HAMILTON**
Courtroom 3, 17th Floor

Nichole Heuerman, Courtroom Deputy
(415) 522-2023

## STANDING ORDER FOR CASES INVOLVING
## SEALED OR CONFIDENTIAL DOCUMENTS

Proposed Protective Orders

      1.    The court will not approve a broad protective order that essentially gives each party carte blanche to decide which portions of the record will be sealed and, therefore, not made part of the public record. See Civ. L. R. 79-5; Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943 (7th Cir. 1999). Fed. R. Civ. Pro. 26(c) as well as the local rules require the court to determine whether good cause exists to seal any portion of the record. Therefore, all proposed protective orders submitted for court approval which contain provisions for filing documents under seal, must also provide a procedure for obtaining the sealing order that complies with Civ. L. R. 79-5.

Requests to File Documents Under Seal

      2.    Parties are reminded that court proceedings are presumptively public, and no document shall be filed under seal without request for a court order that is narrowly tailored to cover only the document, the particular portion of the document, or category of documents for which good cause exists for filing under seal. To that end, if a party wishes to file a document under seal, that party shall first file a written request for a sealing order setting forth the good cause and accompanied by a proposed order that is narrowly tailored as specified above.

      3.    However, if the sole ground for the sealing order is that the opposing party (or non-party) has designated the document as confidential, the opposing party (or non-party) shall file a declaration establishing good cause for the sealing along with a proposed order, or shall withdraw the designation. The declaration shall be filed within five days of service on the opposing party (or non-party) of the request for a sealing order. If the declaration is not filed as required, the court may order that the document be filed in the public record.

Use of Sealed Documents in Motion Papers

      4.    The court cautions parties that documents designated as confidential that are attached as exhibits to case-dispositive motions, or redacted portions of case-dispositive briefs that contain confidential information, must meet the high "compelling reasons" threshold. See Kamakana v. City of Honolulu, 447 F.3d 1172 (9th Cir. 2006). A good cause showing, without more, will not satisfy a compelling reasons test, but will

Revised 10-17-06

only suffice to maintain the confidentiality of documents attached to *non-dispositive* motions. Documents designated as confidential in conjunction with case-dispositive motions and/or briefs that do not satisfy the compelling reasons test may accordingly be re-designated as public information upon proper request. See Foltz v. State Farm Mut. Automobile Ins. Co., 331 F.3d 1122 (9th Cir. 2003).

Use of Sealed or Confidential Documents at Trial

5.     Notwithstanding any provision of a protective order to the contrary, any document, whether previously designated confidential or previously sealed, will be unsealed and/or will lose its confidential status if offered as an exhibit at trial, absent a showing of the "most compelling" reasons. See Manual for Complex Litigation § 21.432; Foltz, 331 F.3d at 1135-36. Any party believing that a document, portions thereof, or witness testimony should remain confidential or sealed during trial must request in advance of trial that the court take extraordinary measures, such as closing the courtroom to the public or sealing the trial transcript, to protect the confidentiality of that information. The request must be made in writing and filed no later than the date on which pretrial papers are due.

If previously sealed documents are ordered unsealed for use at trial, counsel for the party offering the document as evidence shall within two business days of the conclusion of the trial identify which entries on the docket represent the exhibits actually received. Counsel are required to cooperate with the deputy clerk in order to complete the unsealing process in cases involving voluminous sealed documents.

**Judge Phyllis J. Hamilton**
Courtroom 3, 17th Floor

Nichole Heuerman, Courtroom Deputy
(415) 522-2023

## STANDING ORDER FOR SECURITIES
## CLASS ACTION SETTLEMENTS

This order is intended to facilitate disposition of class action securities cases in the event that a settlement is reached. Voluntary settlement between the parties is the preferred method of resolution in all cases. However, once settlement is achieved, the adversarial process which usually acts to inform the court's rulings may cease to function. Because a settlement affects the rights of absent class members, the court must ensure that the settlement is fair and reasonable with respect to their interests. This court will approve notices, plans of allocation, settlements and fee requests only if the court is first presented with information sufficient to allow a meaningful evaluation of the questions put before it.

Certain issues arise with some frequency in these cases, and the court addresses them here. This discussion is in no way exhaustive regarding the duties of counsel in securing approval of a class action settlement. Counsels' goal should always be to facilitate a meaningful evaluation by the court.

A.  Preliminary and Final Approval of Settlements.

Traditionally, the most thorough review of the terms of the proposed settlement, the plan of allocation, and any application for attorneys' fees and/or costs has occurred at the final approval stage. However, this court believes it is preferable to conduct a thorough evaluation of these issues at the preliminary approval stage, before notice is given to the class. Conducting such an inquiry at this stage will help ensure that the class notice is as complete as possible, thus enabling each member to engage in their own meaningful evaluation of the proposed settlement. See Manual For Complex Litigation, §30.42 (3d ed. 1995). In addition, if such a review is not conducted until after notice has been mailed, there is a risk that the notice process will need to be repeated, thus further depleting the settlement fund, should the court disapprove any of the components of the settlement. Guidelines for briefing of these issues are discussed below.

   1.  Preliminary Approval of Settlement.

At the preliminary approval stage, the parties must provide sufficient information to permit a meaningful preliminary fairness evaluation of the settlement. Such information must include, at a minimum, the relevant claims and defenses, an honest assessment of the strengths and weaknesses of each side's position (bolstered by the results of discovery if any has occurred), each side's views regarding the risks of proceeding to trial,

an indication of the total amount of damages sought by plaintiffs and, if different, plaintiffs' anticipated recovery at trial, and whether any part of the settlement fund is to be paid through insurance proceeds. Because both sides have an interest in obtaining approval of the settlement, and because information from both sides is critical to the court's evaluation, both sides shall participate in this process. The parties shall file a brief in support of the application for preliminary approval of the settlement that specifically addresses the factors mentioned above. The parties may file separate briefs or they may file a single joint brief. In either case counsel from each side who participated in the settlement process shall file a sworn declaration attesting to the facts in the brief(s) and further declaring that the settlement is fair, reasonable, and was achieved through arms-length negotiations. Plaintiffs' counsel shall in addition submit a declaration by the lead plaintiff(s) attesting to and describing that person's involvement in the settlement process and stating whether the lead plaintiff objects to or concurs with the settlement.

      2.      Final Approval of Settlement.

At the final approval stage, the court's primary concern is the response of the class to the proposed settlement. Accordingly, in the motion for final approval the court must be provided with a status report on the notice and opt-out process that reports any matters that may have arisen in the interim period. This report should include, at a minimum: the number of notices sent out in the original mailing; the number of requests for notice received by the administrator; the dates and number of notices sent in subsequent mailings; the date the summary notice was published; a copy of the published summary notice; the number of requests for exclusion received; the number of proof of claim forms received to date; a detailed description or copy of all objections received; and any final revisions or modifications to applications for fee and cost awards. The parties need not reiterate the same arguments made in briefs filed at the preliminary approval stage.

B.      Approval of Plans of Allocation.

The court will review the plan of allocation at the preliminary approval stage. To enable that review, plaintiffs must specifically describe the plan and explain why the ultimate plan was selected. If an expert was used in formulating the plan of allocation, that expert shall submit a declaration describing his or her work in formulating the plan and explaining why the court should approve it.

C.      Approval of Proposed Notice.

The court will review the proposed notice at the preliminary approval stage. The court will not approve any notice which conditions participation at the final approval hearing upon the filing of written objections. Any class member who wishes to be heard at the hearing, regardless of whether he/she has filed an objection, will be given that opportunity. Notices may, however, encourage that written objections be submitted first. See Manual For Complex Litigation, §30.41. Additionally, when drafting proof of claim and request for exclusion forms, counsel should be careful not to make either process more onerous than is absolutely necessary. If a member requesting exclusion is required to submit more

2

information than a member seeking to file a claim, counsel must provide an explanation.

D.     Application for Attorneys' Fees and/or Costs.

The court will initially review any application for fees and/or costs at the preliminary approval stage. When presented with an application for fees and/or costs, the court has "the responsibility of reviewing the fees . . . to ensure that they are fair to the class and otherwise meet the Reform Act's standards." In re Cavanaugh, 306 F.3d 726, 733, n.13 (9th Cir. 2002). In performing this review, the court "must assume the role of fiduciary for the class of plaintiffs" because "the relationship between plaintiffs and their attorneys turns adversarial at the fee setting stage." In re Washington Public Power Supply Sys. Lit., 19 F.3d 1291, 1302 (9th Cir.1994). To aid the court in fulfilling this role, counsel shall comply the with the following minimum guidelines.

Preliminarily, counsel should review the following opinions prior to preparing any application for fees or costs: In re Quantum Health Resources, 962 F. Supp. 1254 (C.D. Cal. 1997); and In re Brooktree Securities Litigation, 915 F. Supp. 193 (S.D.Cal. 1996). These cases accurately describe the difficulties often faced by the court in reviewing a fee and/or cost application.

Fee applications are "subject to close judicial scrutiny based on counsel's actual work done and results achieved." In re Cavanaugh, 306 F.3d at 733. Plaintiffs' submissions must permit such scrutiny. This court will not grant a fee request supported only by boilerplate that does not focus on the particular case under review. String cites or lengthy exhibits listing other litigation in which particular fees were approved are not helpful. See In re Brooktree Securities Litigation, 915 F. Supp. at 197. Rather, counsel must take pains to describe why the requested fee is appropriate in the case currently before the court. Counsel must describe with particularity the risks posed by the instant litigation and explain how they justify the requested fee. See In re Quantum Health Resources, 962 F. Supp. at 1258-59 ("The Ninth Circuit's 25% benchmark assumes a genuine degree of risk. . . . it is appropriate for a court to depart significantly from the 25% benchmark . . . unless genuine risk exists in a particular securities class action case."); see also In re Cavanaugh, 306 F.3d at 733, n.13 ("the court has wide latitude to go below the agreed amount in actually awarding fees.").

Regarding cost applications, the court will not award costs for any item unless counsel provides the following: (1) documentation in support of each substantial item;[1] (2) a description of each item and an explanation as to why it was necessary; and (3) legal authority establishing that such an item is a compensable cost. See In re Fleet/Norstar Securities Litigation, 974 F. Supp. 155, 158 (D.R.I. 1997) ("Noncompensable expenses

---

[1] In providing documentation, counsel must exercise good judgment and assist the court. The court is not interested in pouring through every receipt for copies of late night take-out. However, where the expenses are more substantial, such expenses normally are and should be substantiated with copies of invoices, billing statements, etc.

3

include those which are not adequately supported by detailed records showing the amount of each expense, the reason for the expenditure, and the relationship between the expense and some reasonable benefit to the class."). By way of illustration, if counsel requests expert fees as an item of reimbursable costs, counsel shall provide proof regarding the hours worked, rate charged, tasks performed, an explanation why such tasks were necessary, and citation to legal authority supporting the request.[2] Moreover, all documentation provided to the court must be properly authenticated and presented in a usable format (i.e., indexed and tabbed). See Orr v. Bank of America, NT & SA, 285 F.3d 764, 775 (9th Cir. 2002) ("The efficient management of judicial business mandates that parties submit evidence responsibly.").

E.  Timing of certain events.

When preparing the schedule for class notice and final hearing, counsel shall be careful to allow sufficient time for class members to receive and respond to the notices before the deadline for requests for exclusion. Typically, the initial mailing to institutions and potential nominees results in a subsequent mailing to individuals and other entities, the names for which are provided by the initial recipients well after the date class notice is ordered. Because the subsequent notice cannot be sent until the identities of the recipients are received by the administrator, counsel should be mindful of scheduling the deadlines in such a manner as to permit the vast majority of class members an opportunity to opt-out before the deadline for doing so.

Additionally, the court requires at least two weeks between the filing of the final approval papers and the final hearing.

F.  Hearings.

Counsel who actively litigated and have first hand knowledge of the settlement are required to appear at all hearings related to the matters discussed above.

---

[2] Counsel are reminded that any cost award will diminish the recovery of the individual class members and are cautioned to keep the interests of the class in mind when paying for items such as airfare, hotels and meals. See generally In re Horizon/CMS Healthcare Corp. Securities Litigation, 3 F.Supp.2d 1208, 1212 (D.N.M. 1998) (finding that "the style in which the attorneys travel and dine is a lifestyle choice not necessarily shared by the class members," and "limit[ing] the attorneys to travel, meal, and hotel expenses at the United States Government per diem rate."); see also In re Media Vision Technology Securities Litigation, 913 F. Supp. 1362, 1370 (N.D.Cal. 1996).

4

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORDER OF THE CHIEF JUDGE

IN RE: ELECTRONIC FILING IN CASES WITH UNREPRESENTED PARTIES

When the Electronic Case Filing (ECF/e-filing) program was established for civil cases in January 2003 (see generally General Order 45), the court's practice was to exclude from the e-filing program cases in which any party was not represented by an attorney. Pursuant to Part III of General Order 45, the court's ECF webpage provided: "All cases involving pro se parties are excluded from the e-filing program and must be filed entirely in paper, unless otherwise ordered by the court."

Effective immediately, cases with unrepresented party litigants in which at least one party is represented by an attorney will no longer be excluded from the e-filing program. All *represented* parties will e-file their submissions to the court on the same basis as in cases not involving pro se litigants and in compliance with all parts of General Order 45. *Represented* parties will be required to serve paper copies by mail on *unrepresented* parties only. As before, unrepresented litigants will continue to file and serve all submissions to the court in paper form unless prior leave is obtained from the assigned judge in a particular case.

IT IS SO ORDERED.

Date: May 11, 2007

Vaughn R Walker
United States District Chief Judge